UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, AtLee and Raphael
Argued by teleconference

COMMONWEALTH OF VIRGINIA

v.      Record No. 0596-21-3

JAMES DANIEL MURPHY

MEMORANDUM OPINION* BY
JUDGE ROBERT J. HUMPHREYS
OCTOBER 26, 2021

FROM THE CIRCUIT COURT OF NELSON COUNTY
Michael R. Doucette, Judge

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General; Elizabeth Kiernan Fitzgerald, Assistant Attorney
General, on briefs), for appellant.

Thomas L. Phillips, Jr. (Phillips, Morrison & Ferrell, L.L.P., on
brief), for appellee.

On November 24, 2020, a Nelson County grand jury indicted James Daniel Murphy

("Murphy") for two violations of Code § 46.2-357—driving while declared a habitual offender

and driving that endangers another person while declared a habitual offender—and also two

violations of Code § 46.2-391—driving while revoked in a manner that endangered another

person and driving while intoxicated ("DWI") while his license was revoked.  Pursuant to Code

§ 19.2-266.2, Murphy moved, pretrial, to dismiss the indictments alleging violations of Code

§ 46.2-391 on double jeopardy grounds arguing that he could not be punished under both Code

§ 46.2-391 and Code § 46.2-357.  The Circuit Court for Nelson County ("circuit court") granted

Murphy's motion and dismissed the two Code § 46.2-391 indictments.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The Commonwealth appeals pursuant to Code § 19.2-398(A)(1) and raises one assignment of error:

> The trial court erred in holding the appellee would be twice placed in jeopardy in violation of the provisions of the Fifth Amendment to the Constitution of the United States and Article I, Section 8 of the Constitution of Virginia because the General Assembly did intend that a criminal defendant could be punished in the same trial for a violation of Va. Code § 46.2-357 and Va. Code § 46.2-391 arising out of the same driving behavior.

Additionally, this Court requested that the parties brief the following issue:

> What effect, if any, does the repeal of Code § 46.2-357, effective July 1, 2021, have upon the current proceedings against appellee in the trial court?

## I. Background

On March 5, 1996, the Virginia Department of Motor Vehicles ("DMV") declared Murphy a habitual offender pursuant to Code § 46.2-352 for reasons which the record does not reflect. On July 23, 2002, the Circuit Court for the City of Lynchburg revoked Murphy's license for a third DWI conviction pursuant to Code § 46.2-391. The present indictments allege alternative violations of two different offenses.

The indictments specify that on July 8, 2020, Murphy operated a vehicle in such a manner as to endanger the life of another while his license was revoked in violation of Code § 46.2-391, and with driving while under the influence of alcohol while his license was revoked in violation of the same code section. Murphy was also separately charged with driving after being declared a habitual offender whose driving privileges were revoked, and with driving after being declared a habitual offender endangering another person after his license was revoked in violation of Code § 46.2-357(B)(1), (2). The Commonwealth concedes that Murphy could be punished for only two of the charged offenses—one instance of a violation of each code section.

Conversely, Murphy contends that he can only be tried for one of the four offenses.  At the time of the indictment,[1] Code § 46.2-357, in relevant part, read as follows:

> A. It shall be unlawful for any person determined or adjudicated an habitual offender to drive any motor vehicle or self-propelled machinery or equipment on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect. . . .
>
> B. Except as provided in subsection D, any person found to be an habitual offender under this article, who is thereafter convicted of driving a motor vehicle or self-propelled machinery or equipment in the Commonwealth while the revocation determination is in effect, shall be punished as follows:
>
> 1. If such driving does not of itself endanger the life, limb, or property of another, such person shall be guilty of a Class 1 misdemeanor punishable by a mandatory minimum term of confinement in jail of 10 days . . . .
>
> 2. If such driving of itself endangers the life, limb, or property of another . . . such person shall be guilty of a felony punishable by confinement in a state correctional facility for not less than one year nor more than five years . . . .
>
>    . . . .
>
> C. For the purpose of enforcing this section, in any case in which the accused is charged with driving a motor vehicle or self-propelled machinery or equipment while his license, permit, or privilege to drive is suspended or revoked or is charged with driving without a license, the court before hearing the charge shall determine whether the person has been determined an habitual offender and, by reason of this determination, is barred from driving a motor vehicle or self-propelled machinery or equipment on the highways in the Commonwealth.  If the court determines the accused has been determined to be an habitual offender and finds there is probable cause that the alleged offense under this section is a felony, it shall certify the case to the circuit court of its jurisdiction for trial.

The Commonwealth conceded in its argument to the circuit court that Murphy could not be punished for both charges of violating Code § 46.2-357.

___

[1] The General Assembly repealed Code § 46.2-357 effective July 1, 2021.  2021 Va. Acts ch. 463.

- 3 -

Additionally, the Commonwealth charged Murphy in the alternative for violations of

Code § 46.2-391(D)(1), (2). Code § 46.2-391 reads, in relevant part, as follows:

> D. Any person convicted of driving a motor vehicle or any self-propelled machinery or equipment (i) while his license is revoked [for a felony DWI or other serious predicate offense] . . . shall, provided such revocation was based on at least one conviction for an offense committed after July 1, 1999, be punished as follows:
>
> 1. If such driving does not of itself endanger the life, limb, or property of another, such person shall be guilty of a Class 1 misdemeanor punishable by a mandatory minimum term of confinement in jail of 10 days . . . .
>
> 2.a. If such driving (i) of itself endangers the life, limb, or property of another . . . such person shall be guilty of a felony punishable by confinement in a state correctional facility for not less than one year nor more than five years . . . .

Again, the Commonwealth conceded in its argument to the circuit court that Murphy could not

be punished for both charges of violating Code § 46.2-391.

On January 7, 2021, Murphy filed a plea of double jeopardy pursuant to Code

§ 19.2-266.2. In his plea, Murphy argued that the Fifth Amendment's prohibition on double

jeopardy precluded the Commonwealth from punishing him for violations of both Code

§ 46.2-357 and Code § 46.2-391 for the same alleged criminal conduct. Murphy conceded that

the two statutes did not constitute the same offense under the Blockburger test but argued that the

clear language of the statute and the legislative history indicated legislative intent to prohibit

punishment for both offenses. After hearing argument, the circuit court agreed with Murphy and

dismissed the charges relating to Murphy's violation of Code § 46.2-391 by written order entered

on June 2, 2021.[2] The circuit court's letter opinion reasoned that

---

[2] Murphy's pleading did not expressly seek pretrial dismissal of any of the charges but simply asked the circuit court to "protect him from multiple punishments" for these offenses. The circuit court dismissed the indictments for violation of Code § 46.2-391 *sua sponte*.

> The language of subsection C [of § 46.2-357] pre-dates the 1999 wholesale changes made to Article 9 (Habitual Offenders) and Article 12 (Suspension and Revocation of Licenses) of Chapter 3 of Title 46.2. By leaving this language in VA Code § 46.2-357, whether in 1999 or in any of the subsequent amendments to this statute, the General Assembly clearly intended the clear meaning of the subsection's language should survive—that a criminal defendant could be punished for violating one section or the other, but not both.

The circuit court accordingly dismissed the Code § 46.2-391 charges "as violative of the defendant's right to [be] free from double jeopardy." Pursuant to Code § 19.2-398(A)(1), the Commonwealth noted its appeal to this Court.

## II. Analysis

The Commonwealth contends that the circuit court erred by finding that Murphy would be twice placed in jeopardy by the Commonwealth simultaneously trying him for violations of both Code § 46.2-357 and Code § 46.2-391. This Court reviews constitutional issues *de novo*. Groffel v. Commonwealth, 70 Va. App. 681, 687 (2019).

The Double Jeopardy Clause of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Virginia Constitution has a similar clause that encompasses the same protections afforded by the Fifth Amendment's Double Jeopardy Clause. Va. Const. art. 1, § 8; Green v. Commonwealth, 65 Va. App. 524, 532 (2015). The Double Jeopardy Clause provides "protection against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." Commonwealth v. Gregg, 295 Va. 293, 298 (2018) (quoting Payne v. Commonwealth, 257 Va. 216, 227 (1999)). When an accused is tried for multiple offenses in the same trial, only the third prohibition is at issue. Turner v. Commonwealth, 221 Va. 513, 529-30 (1980).

- 5 -

In the single trial context, the Double Jeopardy Clause only prohibits multiple *punishments* for the same offense. Andrews v. Commonwealth, 280 Va. 231, 279 (2010). The Commonwealth is entitled to indict and try as many charges as it believes that it can prove. See id. at 287-88. The Double Jeopardy Clause simply does not prohibit the Commonwealth from trying a defendant on multiple charges, even for the same offense, in a single trial. Accordingly, any violation of the Fifth Amendment's prohibition on multiple punishments can only occur at the penalty-determination phase of trial, and not before.[3] Although, for the reasons discussed more fully below, the circuit court was required to conduct a hearing and announce a contingent ruling on the defendant's motion, actually dismissing an indictment pretrial for violating a defendant's right to be free from multiple punishments was premature, and the circuit court erred by doing so. See Williams v. Commonwealth, 57 Va. App. 750, 768 n.4 (2011).

Ordinarily, despite the request of both parties in this case that we address the merits of Murphy's double jeopardy claim, simply reversing the circuit court's premature dismissal of some of the charges in this case and remanding it for the trial to proceed would end our current review of this case. See Commonwealth v. Swann, 290 Va. 194, 196 (2015) ("The doctrine of judicial restraint dictates that we decide cases on the 'best and narrowest grounds available.'" (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4 (2010))). Of course, there remains the possibility of further appellate review of the multiple punishments issue on direct appeal if it becomes necessary to do so but at that point, the Commonwealth has no ability to appeal any decision on the merits of Murphy's double jeopardy claim. Nevertheless, to proceed further than that now would require us to decide a legal issue which is not currently before us, from a final judgment not yet rendered, and where there is only a possibility that it would arise after trial on

---

[3] Code § 19.2-294 supplements this conclusion.

remand—an exercise that appellate courts decline to engage in unless required by statute to do so.

However, this case is before us in a unique procedural posture. Murphy properly filed his plea pursuant to Code § 19.2-266.2 which requires that a defendant seeking dismissal of any count or charge on the grounds that he or she "would be twice placed in jeopardy in violation of the provisions of the Fifth Amendment" must raise such a motion in writing prior to trial. Code § 19.2-266.2 also requires the circuit court hold a hearing on the motion not later than three days prior to trial. Code § 19.2-398 uses the exact same language as Code § 19.2-266.2 in defining the Commonwealth's right to petition for appeal of pretrial rulings dismissing indictments on double jeopardy grounds. The clear rationale for these requirements is to allow the Commonwealth the opportunity to exercise its right to an interlocutory appeal of such rulings to this Court. Accordingly, because Murphy properly sought a ruling on the double jeopardy issue pretrial, the circuit court was required by statute to hold a hearing on the motion as it did and, even though dismissal of any of the charges at that stage was premature, the statutory scheme nevertheless required the circuit court to announce its ruling on the issue contingent upon Murphy's conviction for all the charged offenses. Doing so is consistent with the legislative intent to allow the Commonwealth the statutorily required opportunity to appeal the circuit court's contingent judgment. Furthermore, because the clear legislative language of Code § 19.2-398 is to permit *pretrial* appellate review of contentions that a "defendant would be twice placed in jeopardy in violation of the provisions of the Fifth Amendment to the Constitution of the United States or Article I, Section 8 of the Constitution of Virginia," we conclude that we are likewise required to address the merits of whether Murphy would suffer multiple punishments for the same offense if convicted and sentenced for violations of both Code § 46.2-357 and Code § 46.2-391. To hold otherwise would undermine the clear intent of the General Assembly to

allow pretrial appellate review of the merits of a Commonwealth appeal of a *potential* dismissal on double jeopardy grounds.[4]  Therefore, we address the merits of the circuit court's double jeopardy analysis.

To determine whether two offenses are the same for purposes of double jeopardy, the United States Supreme Court has concluded that the only test which courts should employ is the Blockburger test.  United States v. Dixon, 509 U.S. 688, 703-08 (1993); Blockburger v. United States, 284 U.S. 299 (1932).  The Blockburger test asks whether each statutory offense requires proof of a fact that the other does not.  Blockburger, 284 U.S. at 304.

Murphy concedes that driving while declared a habitual offender under Code § 46.2-357 and driving with a license revoked under Code § 46.2-391 are not the "same offense" under the Blockburger test.  However, we are not bound by the parties' concessions of law and cannot allow the parties' concessions to create the law of the Commonwealth.  Daily Press, Inc. v. Commonwealth, 285 Va. 447, 454 n.6 (2013).  Nonetheless, in this context, we agree with the parties and conclude that the two charged offenses are not the "same" for purposes of double jeopardy.

Under the Blockburger test, both Code § 46.2-357 and Code § 46.2-391 contain an element that the other does not.  Code § 46.2-357 requires proof that the accused was declared a habitual offender; Code § 46.2-391 does not.  Code § 46.2-391 requires proof that an accused's license was revoked for at least one offense occurring after 1999; Code § 46.2-357 does not.  Accordingly, the two offenses are not the "same" for double jeopardy purposes.  This conclusion resolves any

---

[4] We observe that rendering contingent judgments such as this by both the circuit court and this Court could *only* occur when there is a pretrial appeal by the Commonwealth pursuant to Code § 19.2-398 involving the multiple punishments component of the constitutional protection against double jeopardy.  This is because that is the only one of the statutorily enumerated grounds for a Commonwealth pretrial appeal which is only triggered at the time of sentencing, if at all.

constitutional concerns with Murphy's punishment if convicted of violations of both Code § 46.2-357 and Code § 46.2-391.

However, although he conflated it with the constitutional issue, Murphy also advanced a statutory construction argument in the circuit court that was also part of the double jeopardy analysis adopted by that court in its judgment. Murphy contended, and the circuit court agreed, that the plain language and the legislative history of Code § 46.2-357 show that the General Assembly did not intend for individuals to be punished under both Code § 46.2-357 and Code § 46.2-391.

While the Blockburger test is dispositive in determining if two offenses are the same for constitutional double jeopardy purposes, that test is unhelpful to a statutory construction analysis of whether the General Assembly nevertheless intended to restrict punishment for multiple offenses.

Applying standard rules of statutory construction and the plain meaning of the statute leads us to conclude that Code § 46.2-357 does not prohibit multiple punishments involving other offenses. When construing a statute, our primary goal is to give effect to legislative intent. Va. Elec. & Power Co. v. State Corp. Comm'n, ___ Va. ___, ___ (July 15, 2021). Accordingly, courts should refrain from adding language or deleting language from a statute. Va. Elec. & Power Co. v. State Corp. Comm'n, 284 Va. 726, 741 (2012). Furthermore, it is "our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." Id. (quoting REVI, LLC v. Chicago Title Ins. Co., 290 Va. 203, 208 (2015)).

Code § 46.2-357(C) is composed of two sentences. The first requires a presiding judge of a district court to determine whether an individual charged with driving while suspended or revoked (under *any* statute) is a habitual offender. The second sentence provides that "[i]f the court determines the accused has been determined to be an habitual offender and finds there is probable cause that the alleged offense under this section is a felony, it shall certify the case to the circuit court of its jurisdiction for trial."

Murphy contends that subsection (C) requires the judge to determine whether the "accused has been declared a habitual offender and, if so, proceed under [Code] § 46.2-357." However, that is simply not what the statute says and reading the statute in that manner would require us to impermissibly add language to it. Interpreting the statute as a consistent and harmonious whole requires us to read both sentences of subsection (C) as interdependent; in other words, we read subsection (C) as a directive to the *district* courts to first, determine whether the accused is a habitual offender and whether the charged conduct could be a felony and second, to certify the felony to the *circuit* court. Murphy's interpretation would require this Court to separate the two sentences, severing the directive to determine whether probable cause exists that the alleged offense is a felony from the directive to certify the case to the circuit court, and effectively add the language "if so, proceed under this section" to the end of the first sentence.

Additionally, we note that in other situations when the General Assembly has sought to prohibit multiple punishments as a matter of policy rather than constitutional prohibition, it has used clear language to express that intent. For example, Code § 18.2-415, prohibiting disorderly conduct, specifically instructs courts that "conduct prohibited under subsection A shall not be deemed . . . to include conduct otherwise made punishable under this title." Additionally, Code § 19.2-294.1 provides that "[w]henever any person is charged with a violation of [driving a motor vehicle while intoxicated under] § 18.2-266 . . . and with reckless driving in violation of § 46.2-852 . . . growing out of the same act or acts and is convicted of one of these charges, the court shall dismiss the remaining charge." The General Assembly clearly knows how to express its intent to prohibit multiple punishments not otherwise constitutionally prohibited but chose not to do so in Code § 46.2-357. See Gregg, 295 Va. at 300.

Furthermore, the legislative history does not clearly reflect legislative intent to prohibit multiple punishments. In 1968, the General Assembly enacted the Habitual Offender Act. 1968

- 10 -

Va. Acts ch. 476.  Under the Act, if an individual was convicted of three or more predicate offenses within a ten-year period, they could be declared a habitual offender.  In 1999, the General Assembly made wholesale changes to licensure suspension and the habitual offender statute.  1999 Va. Acts chs. 945, 987.  As part of those changes, the General Assembly removed the process for declaring new habitual offenders yet retained the criminal punishments for those who had previously been determined habitual offenders.  Id.  Additionally, the General Assembly amended Code § 46.2-391 to include penalty provisions identical to the ones found in Code § 46.2-357.  Id.  Murphy contends that by abolishing the declaration of new habitual offenders and by creating identical penalty provisions the General Assembly intended for Code § 46.2-391 to become the replacement recidivist statute.  Murphy argues, therefore, that these changes reflected the General Assembly's intent to create two mutually exclusive classes of punishment:  one for previously determined habitual offenders and one for all other recidivist drivers.

However, as the Commonwealth notes in its brief, the amendments to Code § 46.2-391 also clearly limit its application to cases where the defendant's license revocation "was based on *at least one* conviction for an offense committed after July 1, 1999."  (Emphasis added).  Therefore, when the General Assembly adopted the changes, it clearly contemplated the possibility that some individuals would have extensive driving records prior to the enactment of the statute.  Contrary to Murphy's argument, the General Assembly chose *not* to create a clear dividing line between pre-1999 recidivist offenders and post-1999 recidivist offenders.  Had it intended to do so, the General Assembly could have required that *all* convictions for which the defendant's driver's license was revoked were committed after 1999.  As such, the General Assembly included protections against multiple punishments by requiring that one could not be punished under Code § 46.2-391 unless at least one offense leading to revocation occurred after 1999.  If Murphy had not reoffended after 1999, he could not have been punished under Code § 46.2-391.  The plain language

- 11 -

of the statute is incompatible with Murphy's assertion that the General Assembly created an entirely separate class of punishment for all recidivist drivers.

Lastly, both parties agree that, despite the recent repeal of Code § 46.2-357, the Commonwealth may proceed with its prosecution under Code § 46.2-357 due to the language of Code § 1-239. See Ruplenas v. Commonwealth, 221 Va. 972, 978 (1981). We also agree. Code § 1-239 reads, in relevant part, as follows:

> No new act of the General Assembly shall be construed to repeal a former law, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture, or punishment incurred, or any right accrued, or claim arising under the former law, *or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture, or punishment so incurred*, or any right accrued, or claim arising before the new act of the General Assembly takes effect . . . .

(Emphasis added).

Murphy argues that the General Assembly's repeal of Code § 46.2-357 is evidence of its intent to not impose multiple punishments. However, Murphy's argument fails due to the expansive language of Code § 1-239 mandating that repeal does not "in any way whatever affect any . . . offense" committed against the former law. Repeal simply has no bearing on our determination of legislative intent in this case.

Because the statutory language and legislative history do not plainly prohibit multiple punishments for violations of Code § 46.2-357 and Code § 46.2-391, the application of the Blockburger test provides "a clear indication of contrary legislative intent." Gregg, 295 Va. at 298 (quoting Whalen v. United States, 445 U.S. 684, 692 (1980)). As we have already noted, Code § 46.2-357 and Code § 46.2-391 are not the same offense under Blockburger; therefore, we find that the General Assembly clearly did not intend to forbid multiple punishments.

III.  Conclusion

Neither the Double Jeopardy Clause nor the statutory language or history of Code § 46.2-357 precludes the Commonwealth from seeking, and Murphy receiving, punishment if convicted under both Code § 46.2-357 and Code § 46.2-391.  The circuit court erred by dismissing the Code § 46.2-391 indictments, and we reverse the judgment of the circuit court and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.